******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARCO BATTISTOTTI *v.* SUZANNE A.*
(AC 39643)

DiPentima, C. J., and Alvord and Dewey, Js.

*Syllabus*

The plaintiff father appealed to this court from the judgment of the trial
court awarding the defendant mother sole legal and primary physical
custody of the parties' minor child. The plaintiff, who resided in New
York City and rented an apartment in the Greenwich solely for parenting
time with his son, had brought this child custody action seeking, inter
alia, joint legal custody and visitation on a schedule to be determined.
After a trial, the court awarded, inter alia, the plaintiff a minimum
of seventeen hours of parenting time biweekly and ordered that such
parenting time occur within the town of Greenwich. On appeal, the
plaintiff claimed, inter alia, that the trial court erred in failing to consider
how its orders impacted his expenses, particularly the rental of the
Greenwich apartment, and abused its discretion in requiring that the
plaintiff's parenting time take place only within the town of Green-
wich. *Held:*

1. The trial court abused its discretion in failing to analyze whether the
   plaintiff's visitation expenses warranted a deviation from the child sup-
   port guidelines; that court did not address in its decision the plaintiff's
   request that his child support obligation reflect the undisputed expenses
   related to the Greenwich apartment even though it had expressly found
   that the plaintiff rented and renovated the apartment to be able to spend
   time with his child, and the court, having made that finding, should have
   analyzed whether the application of the guidelines would have been
   inequitable or inappropriate and should have determined, pursuant to
   the relevant state regulation [§ 46b-215a-5c], whether the criterion for
   deviation on the basis of significant visitation expenses was met, espe-
   cially given that both parties recognized that the Greenwich apartment
   was maintained for the child and was referenced in their proposed
   orders, and the plaintiff consistently identified the costs associated with
   maintaining the Greenwich apartment as expenses related to the child,
   which were not challenged by the defendant.

2. The plaintiff failed to demonstrate that the trial court abused its discretion
   by restricting his parenting time with his child to the town of Greenwich;
   the plaintiff's reliance on the court's finding that both parents demon-
   strated a respect for court orders and had the ability to be actively
   involved in the life of the child was unavailing, as the court also made
   findings expressing concern about the plaintiff's lack of understanding
   of his child's needs and the factors hindering the plaintiff's establishment
   of a healthy relationship with his child, and the plaintiff did not address
   those findings.

Argued February 8—officially released May 15, 2018

*Procedural History*

Action for custody of the parties' minor child, brought
to the Superior Court in the judicial district of Stamford-
Norwalk; subsequently the matter was transferred to
the judicial district of New Haven and tried to the court,
*Tindill, J.*; judgment awarding sole legal and primary
physical custody to the defendant, and ordering, inter
alia, visitation to the plaintiff from which the plaintiff
appealed to this court. *Reversed in part; further pro-
ceedings.*

*John R. Williams*, for the appellant (plaintiff).

*David M. Moore*, for the appellee (defendant).

*Opinion*

ALVORD, J. In this protracted and bitterly contested family matter, the plaintiff father, Marco Battistotti, appeals from the judgment rendered by the court following a ten day trial on his custody action filed against the defendant mother, Suzanne A. On appeal, the plaintiff claims that the court: (1) improperly found that his earning capacity was $174,000 per year, (2) erred in failing to consider how its orders impacted his expenses, particularly the rental of an apartment in Greenwich used solely for parenting time, and (3) abused its discretion in requiring that the plaintiff's parenting time take place only within the town of Greenwich. We agree with the plaintiff's second claim and conclude that the trial court abused its discretion. Accordingly, we reverse the judgment with respect to the child support orders and remand the matter for further proceedings on the issue of calculation of child support.[1] We affirm the judgment in all other respects.

The following facts and procedural history are necessary for the resolution of the plaintiff's appeal. The plaintiff and the defendant, who were never married, became parents to a son in June, 2014. On June 13, 2014, the plaintiff, a resident of New York City, filed a child custody action in the judicial district of Stamford[2] seeking joint legal custody of the parties' child. He requested that the primary residence of the child be with the defendant and sought visitation on a schedule to be determined. He further sought a parenting responsibility plan for the parental decision-making regarding the child. The court, *Tindill, J.*, conducted a trial over the course of ten days. Both parties testified, as did the child's guardian ad litem.

The court issued a written memorandum of decision on September 7, 2016. The plaintiff filed a motion for articulation, and the court issued an articulation on October 6, 2016. On November 18, 2016, the court issued a corrected memorandum of decision, in which it made a number of findings with respect to the parties and their respective abilities to meet the needs of the child. The court found that the defendant had rebutted the presumption of joint legal custody and awarded sole legal custody, primary physical custody, and final decision-making authority to the defendant. The court awarded the plaintiff a minimum of seventeen hours of parenting time biweekly, and ordered that such parenting time occur within the town of Greenwich. The court prohibited the plaintiff from removing the child from Greenwich or the state of Connecticut. The court ordered the defendant or her designee to transport the child to and from the apartment the plaintiff had rented in Greenwich solely for effectuating his parenting time. The plaintiff was prohibited from driving the child anywhere without obtaining a valid driver's license, and was ordered to provide the defendant twenty-four hours

advance notice of any intention to transport the child in any moving vehicle, with the notice to include confirmation that the vehicle is properly licensed, registered, and insured. The court found that the plaintiff had a minimum net annual earning capacity of $174,356. Referencing the Connecticut Child Support Guidelines, the court ordered the plaintiff to pay $253 per week in child support beginning September 12, 2016.[3] This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we note the well settled standard of review applicable in domestic relations cases. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . [T]he foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Szymczak*, 309 Conn. 390, 399, 72 A.3d 1 (2013). With respect to child support, however, "the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines." (Internal quotation marks omitted.) *Colbert* v. *Carr*, 140 Conn. App. 229, 240, 57 A.3d 878, cert. denied, 308 Conn. 926, 64 A.3d 333 (2013).

I

We first address the plaintiff's claim that the court erred in failing to consider how its orders impacted his expenses, particularly the expense associated with the rental of an apartment in Greenwich used solely for effectuating parenting time with his son. He claims that although the court found that he lived in New York City, the court required that his parenting time take place in the apartment he rented in Greenwich "for the sole purpose of visiting his son" and prohibited him from taking the child out of Greenwich, which order effectively required him to "maintain two separate residences." He argues that the order to pay $253 weekly in child support coupled with the requirement of maintaining two residences "imposed an unsustainable financial burden," and he seeks to have the orders integrated.[4] We agree that the court abused its discretion in failing to analyze whether the plaintiff's visitation expenses warranted a deviation from the child support guidelines.

The following additional facts are necessary for our resolution of this claim. In its memorandum of decision, the court found that it was in the child's best interest to live with his mother and to spend "significant, quality time with his father." The court noted that the defendant "proposes certain restrictions regarding transportation

and location of the plaintiff's parenting time that she believes are essential to address the child's safety." The court found that the plaintiff rented and renovated a Greenwich apartment near the residence shared by the defendant and child, to be able to spend time with the child. With respect to child support, the court ordered that, "[i]n accordance with the Connecticut Child Support Guidelines (Court Exhibit A, attached), the plaintiff father is ordered to pay $253.00/week as child support to the defendant mother beginning September 12, 2016." Exhibit A consisted of the Child Support Guidelines, prepared by "Connecticut Judicial Service Center" and dated September 7, 2016, the date of the memorandum of decision. Figures for gross weekly income, federal income tax, social security tax, medicare tax, and state and local income tax were listed for both parties. Net weekly income was also included for both parties in the amounts of $3,028 with respect to the defendant and $3,353 with respect to the plaintiff. A presumptive support amount of $253 was entered for the plaintiff. Section VII of the worksheet, Deviation Criteria, was not utilized.

"[W]e first set forth the relevant legal principles applicable to our resolution of this claim. The legislature has enacted several statutes to assist courts in fashioning child support orders. . . . The legislature also has provided [in General Statutes § 46b-215a] for a commission to oversee the establishment of child support guidelines, which must be updated every four years, to ensure the appropriateness of child support awards . . . ." (Internal quotation marks omitted.) *Righi* v. *Righi*, 172 Conn. App. 427, 435, 160 A.3d 1094 (2017). The guidelines provide a schedule for calculating "the basic child support obligation," which is based on the number of children in the family and the combined net weekly income of the parents. Regs., Conn. State Agencies § 46b-215a-2c (e).

In support of the application of these guidelines, General Statutes § 46b-215b (a) provides in relevant part: "The child support and arrearage guidelines issued pursuant to [§] 46b-215a . . . shall be considered in all determinations of child support award amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under the deviation criteria established by the Commission for Child Support Guidelines under [§] 46b-215a, shall be required in order to rebut the presumption in such case."

Section 46b-215a-5c of the Regulations of Connecticut State Agencies, which describes the circumstances that may justify a support order different from the pre-

sumptive support amounts calculated under the child support guidelines, provides as a criterion for deviation under subsection (b): "(3) Extraordinary parental expenses . . . In some cases, a parent may incur extraordinary expenses that are not considered allowable deductions from gross income, but which are necessary for the parent to maintain a satisfactory parental relationship with the child, continue employment, or provide for the parent's own medical needs. Only the following expenses, when found to be extraordinary and to exist on a substantial and continuing basis, may justify a deviation from presumptive support amounts under this subdivision: (A) significant visitation expenses . . . ."

"Our courts have interpreted this statutory and regulatory language as requiring three distinct findings in order for a court to properly deviate from the child support guidelines in fashioning a child support order: (1) a finding of the presumptive child support amount pursuant to the guidelines; (2) a specific finding that application of such guidelines would be inequitable and inappropriate; and (3) an explanation as to which deviation criteria the court is relying on to justify the deviation." *Righi* v. *Righi*, supra, 172 Conn. App. 436–37.

There is negligible appellate case law explicating the deviation criterion for significant visitation expenses.[5] In the present case, both parties referenced the Greenwich apartment rental in their proposed orders. The plaintiff requested that "[p]ast, current and future child related expenses [in]curred by plaintiff such as traveling from and to Greenwich for parenting time, rent and utilities of the Greenwich apartment used solely for parenting time with the minor child should be . . . paid in accordance to the child support guidelines currently in effect, 80 [percent] defendant, 20 [percent] plaintiff, unless modified. Plaintiff do[es] not reside at the Greenwich apartment except during parenting time with the minor child." In the defendant's amended proposed orders, she specifically requested that the plaintiff's parenting time be "at his Greenwich apartment and only within the Town of Greenwich, CT." In its memorandum of decision, the court expressly found that "[t]he plaintiff rented and renovated an apartment in proximity to the defendant's and child's residence to be able to spend time with [the child]." The court also prohibited the plaintiff from removing the child from Greenwich, which proscribed the plaintiff from spending his parenting time at his residence in New York City.

Both parties also recognized that the Greenwich apartment was maintained for the child. During the March 4, 2015 status conference, the court asked the plaintiff what time he would be "home" in Greenwich, to which the plaintiff responded that he lived in New York City. Although the defendant's counsel interjected

that he lived in "both places," the plaintiff clarified that the apartment in Greenwich is "the baby's apartment" and stated that he had "a bed on top of the kitchen." The defendant's counsel, in closing argument, also referred to the Greenwich apartment as "Baby [L]'s apartment."

Moreover, the plaintiff consistently identified the costs associated with maintaining the Greenwich apartment as expenses related to the child, and such expenses were not challenged by the defendant. In his financial affidavit dated May 4, 2016, the plaintiff reported the following monthly expenditures: Greenwich apartment rent ($1475), Greenwich electricity ($60), Greenwich cable/internet/phone ($117), and Greenwich apartment up-keeping ($10).[6] He further reported monthly travel expenses to and from Greenwich in the amount of $702. He also listed these expenses in an attachment to his amended proposed orders dated May 10, 2016. During trial, the plaintiff introduced into evidence a list of expenses related to the Greenwich apartment from October, 2014 through May, 2015, in the amount of $45,399.13. Rather than dispute these expenses, the defendant's counsel referenced the list in closing argument, remarking that the plaintiff "spent $45,399 in less than six months on Baby [L]'s apartment in Greenwich."

In its memorandum of decision, the court did not address the plaintiff's request that his child support obligation reflect the undisputed expenses related to the Greenwich apartment. The trial court did, however, expressly find that the plaintiff had rented and renovated the apartment to be able to spend time with his child. In order to make that finding, the trial court necessarily had before it evidence that it deemed credible that the plaintiff had both rented and renovated that apartment.[7] Having made that finding, the court should have then analyzed whether application of the guidelines would be inequitable or inappropriate and should have determined, pursuant to § 46b-215a-5c of the Regulations of Connecticut State Agencies, whether the criterion for deviation on the basis of significant visitation expenses was met. The court should have considered whether the expenses are "necessary for the parent to maintain a satisfactory parental relationship with the child," and whether such expenses "exist on a substantial and continuing basis." On remand, in determining whether the plaintiff has incurred significant visitation expenses warranting a deviation from the presumptive support amounts calculated under the child support guidelines, the court may consider that the plaintiff consistently represented that he resided in New York City at the time of the child's birth and that he continues to reside in New York City, but is required to spend his parenting time within the town of Greenwich. The court may further consider that the defendant never challenged the amount of the Greenwich apartment

expenses or that such expenses were incurred by the plaintiff for the sole purpose of effectuating parenting time with their child.

Accordingly, we conclude that the court, having found that the plaintiff "rented and renovated an apartment in proximity to the defendant's and child's residence to be able to spend time with" the child, abused its discretion in failing to analyze whether his visitation expenses warranted a deviation from the child support guidelines. The proper remedy is to remand the matter for the court to hold a new hearing on the issue of calculation of child support.[8]

## II

The plaintiff also claims that the court abused its discretion in restricting the plaintiff's parenting time with his child to the town of Greenwich. He argues that the court made no findings supporting this onerous order, and that the restriction is inconsistent with the court's finding that it is in the best interest of the child to "spend significant, quality time with his father." We disagree that the court abused its discretion.

"The authority of a court to render custody, visitation and relocation orders is set forth in General Statutes § 46b-56. In making or modifying any order with respect to custody or visitation, the court shall . . . be guided by the best interests of the child . . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. . . . The trial court is vested with broad discretion in determining what is in the child's best interests." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Gina M.G.* v. *William C.*, 77 Conn. App. 582, 587–88, 823 A.2d 1274 (2003). The foundation for the abuse of discretion standard in family matters is "that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing." (Internal quotation marks omitted.) *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 432, 759 A.2d 1050 (2000).

The following additional facts are relevant to this claim. In its corrected memorandum of decision, the court began by noting that it had reviewed and considered the criteria contained in relevant statutes, including § 46b-56. The court concluded that it was in the best interest of the child to live with the defendant and "spend significant, quality time" with the plaintiff. It also, however, recognized a "high level of conflict and mistrust between the parents," and noted that the defendant "proposes certain restrictions regarding transportation and location of the plaintiff's parenting time that she believes are essential to address the child's safety." With respect to the parties' capacity to meet the needs

of the child, the court concluded that the plaintiff "has exhibited considerable lack of knowledge and understanding of the needs of his son as a newborn, infant, and toddler. While his parenting skills improved with supervision, the evidence reveals that his singular focus on what he perceives to be the failings of the defendant appears to diminish his capacity for recognizing and prioritizing the developmental needs of his son."

The court further found that the plaintiff had made efforts to establish a healthy relationship with his child, but that his efforts were hindered in part by the plaintiff's arrest for disorderly conduct, which prohibited contact with the child for nearly four months. Although the court found that both parents demonstrate a respect for court orders, the court also found that the plaintiff "engages in manipulation and coercive behavior in an effort to involve the child in the parents' dispute." The court ordered a minimum of seventeen hours biweekly parenting time for the plaintiff, and further ordered that such parenting time shall occur in Greenwich.

The plaintiff argues that the court's restriction of his parenting time to the town of Greenwich was capricious and points to the court's findings that both parents "demonstrate a respect for court orders" and "have the ability to be actively involved in the life of the child."[9] The plaintiff does not challenge and, instead, ignores the court's findings expressing concern about the plaintiff's lack of understanding of his child's needs and the factors hindering the plaintiff's establishment of a healthy relationship with his child, who was just twenty-three months old at the time of trial. We conclude that the plaintiff has failed to demonstrate that the court abused its discretion in limiting the plaintiff's parenting time to the town of Greenwich.[10]

The judgment is reversed only as to the child support related orders and the case is remanded for further proceedings on those issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Because we agree with the plaintiff's second claim and reverse the judgment and remand the case for further proceedings on the issue of calculation of child support, we need not reach his first claim. See *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 782, 66 A.3d 922 (2013) (remanding to trial court for new hearing on financial issues regarding child support where court abused its discretion in ordering downward deviation from guidelines). However, we note as a general matter that under the child support guidelines, "the child support obligation first is determined without reference to earning capacity, and earning capacity becomes relevant only if a deviation from the guidelines is sought" under § 46b-215a-5c (b) (1) (B) of the Regulations of Connecticut State Agencies. *Fox* v. *Fox*, 152 Conn. App. 611, 635, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014); see footnote 8 of this opinion.

[2] We note that the plaintiff properly commenced this action in the judicial district of Stamford-Norwalk, where the defendant and child reside. General Statutes § 51-345 (a) (3) (E) governs venue in civil actions and provides in relevant part that if either the plaintiff or the defendant resides in the town

of Greenwich, the "action may be made returnable at the option of the plaintiff to either the judicial district of Stamford-Norwalk or the judicial district of Fairfield." Although neither of the parties appear to have filed a motion to transfer the action, the court transferred the action from Stamford to the judicial district of New Haven on March 16, 2018.

General Statutes § 51-347b (a) provides in relevant part: "Any action . . . may be transferred, by order of the court on its own motion or on the granting of a motion of any of the parties, or by agreement of the parties, from the superior court for one judicial district . . . to a superior court location for any other judicial district, upon notice by the clerk to the parties after the order of the court, or upon the filing by the parties of a stipulation signed by them or their attorneys to that effect."

Practice Book § 12-1 further provides in relevant part: "Any cause . . . may be transferred from a judicial district court location to any other judicial district court location or to any geographical area court location, or from a geographical area court location to any other geographical area court location or to any judicial district court location, by order of a judicial authority (1) upon its own motion or upon the granting of a motion of any of the parties, or (2) upon written agreement of the parties filed with the court."

[3] The court made further orders with respect to the guardian ad litem, coparenting counseling, notice of issues concerning the child, and health insurance.

[4] The plaintiff also briefly challenges the court's orders that he pay approximately $45,000 of the outstanding guardian ad litem fees and half of any coparenting counseling fees. He offers no support for this challenge other than asserting generally that the totality of the court's financial orders "imposed an unsustainable financial burden." The plaintiff's cursory argument does not provide a basis in law for this court to conclude that the trial court abused its discretion in issuing these orders. See *Juma* v. *Aomo*, 143 Conn. App. 51, 61, 68 A.3d 148 (2013).

[5] This court has explained that "[m]any non-custodial parents have some transportation costs to see their child—for parents living within driving distance of each other, for example, the non-custodial parent is likely to pay for fuel and other costs picking up or dropping off the child, but these ordinary expenses usually do not warrant a deviation from the presumptive amount." (Internal quotation marks omitted.) *Kavanah* v. *Kavanah*, supra, 142 Conn. App. 781–82 (trial court abused its discretion in ordering a deviation based on travel expenses defendant incurred in driving from Monroe to Southington every other weekend of his parenting time with his child, where court failed to identify why such travel costs were "extraordinary" so as to warrant deviation). The trial court, however, has had occasion to consider similar facts involving a parent's rental of an apartment for the purpose of spending parenting time with his child, finding such expenses to constitute "extraordinary visitation expenses" necessary to maintain a healthy and satisfactory parental relationship with the child. See *Doroski* v. *Doroski*, Superior Court, judicial district of New London, Docket No. FA-04-0129861-S (Oct. 2, 2012) (after defendant moved to New York City, his $700 per month expense to rent Niantic residence "which he would not otherwise do but for the need to have a place to stay while visiting with the minor child" and $250 per month additional gas expense justified child support award that deviated from guidelines); see also *Milbert* v. *Milbert*, Superior Court, judicial district of Hartford, Docket No. HHD-FA-155039631-S (July 17, 2017) (finding deviation justified on the basis of the father's increased visitation expenses, including flights, hotels, meals, and renting a car, after the child's mother moved with the child to Oregon); *Bushey* v. *Bushey*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-96-0152020-S (Mar. 12, 2002) (finding payment of presumptive support obligation by the plaintiff would be inequitable and that deviation from guidelines is appropriate because of significant visitation expenses and maintaining living accommodations for children when they visit plaintiff).

[6] The plaintiff previously had identified Greenwich apartment expenses in his May 1, 2015 financial affidavit.

[7] Although the trial court broadly rejected "the information on the plaintiff-appellant's sworn financial affidavits regarding his income from employment and expenses" as not truthful, we read this language contained in the court's articulation as necessarily rejecting only certain of the plaintiff's expenses. A reading of the articulation as rejecting the plaintiff's reported monthly *child expenses*, which included the expenses associated with the renting of the Greenwich apartment, would be inconsistent with the court's express

finding that the plaintiff had rented and renovated the apartment.

[8] Although we need not address the plaintiff's claim that the court erred in finding that he had an earning capacity of $174,356; see footnote 1 of this opinion; we reiterate the procedure that a court must follow before ordering child support on the basis of the deviation criteria of a party's earning capacity.

"Under the guidelines, the child support obligation first is determined without reference to earning capacity, and earning capacity becomes relevant only if a deviation from the guidelines is sought" under § 46b-215a-5c (b) (1) (B) of the Regulations of Connecticut State Agencies. (Internal quotation marks omitted.) *Fox* v. *Fox*, 152 Conn. App. 611, 635, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014); see also *Unkelbach* v. *McNary*, 244 Conn. 350, 371, 710 A.2d 717 (1998); *Berger* v. *Finkel*, 161 Conn. App. 416, 427, 128 A.3d 508 (2015) ("[a] party's earning capacity is a deviation criterion under the guidelines" [internal quotation marks omitted]). "[T]he amount of support determined without reference to the deviation criteria is presumed to be the correct amount of support, and that presumption may only be rebutted by a specific finding on the record that the application of the guidelines would be inequitable or inappropriate under the circumstances of a particular case." (Internal quotation marks omitted.) *Fox* v. *Fox*, supra, 635.

This court previously has found significant that there is no express or implied reference to earning capacity in § 46b-215a-2c of the Regulations of Connecticut State Agencies, which provides that the regulation "shall be used to determine the current support . . . components of all child support awards within the state, subject to [§ 46b-215a-5c] of the Regulations of Connecticut State Agencies." (Internal quotation marks omitted.) Id. Where the regulation refers to any type of earned income, it does so in the context of "gross income" and "net income." Id., 635–636. "Gross income" is defined in relevant part as "the average weekly earned and unearned income from all sources before deductions" and "net income" as "gross income minus allowable deductions." Id., 636; see Regs., Conn. State Agencies § § 46b-215a-1 (11) and (18). Earning capacity is not listed among the "gross income inclusions." *Fox* v. *Fox*, supra, 52 Conn. App. 636. Earning capacity is instead found among the criteria for deviation from presumptive support amounts, as a type of "financial [resource] that [is] not included in the definition of net income, but could be used by such parent for the benefit of the child or for meeting the needs of the parent." Regs., Conn. State Agencies § 46b-215a-5c (b) (1).

Given this regulatory framework, a court errs in calculating child support on the basis of a parent's earning capacity without first stating the presumptive support amount at which it arrived by applying the guidelines and using the parent's actual income *and* second finding application of the guidelines to be inequitable or inappropriate. See *Deshpande* v. *Deshpande*, 142 Conn. App. 471, 478–79, 65 A.3d 12 (2013) ("[b]ecause the court failed to specify the presumptive amount or make any findings regarding a deviation from that amount, we can only speculate as to the amount, whether the court's child support order deviated from that amount and, to the extent that there was a deviation, whether the circumstances of this case justified a variance from the presumptive amount based on the court's application of the deviation criteria"); see also *Righi* v. *Righi*, supra, 172 Conn. App. 439 ("enactment's 'specific finding' requirement must be stated explicitly by the court and cannot be inferred merely from the court's determination that deviation from the guidelines is fair and equitable"); *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 215, 118 A.3d 657 (court's award was improper in part because it failed to cite the presumptive support amount calculated with the defendant's actual net income, and then did not invoke the defendant's earning capacity as a deviation criterion in calculating his child support obligation), cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

This court previously has stated that "the reason why a trial court must make an on-the-record finding of the presumptive support amount before applying the deviation criteria is to facilitate appellate review in those cases in which the trial court finds that a deviation is justified. . . . In other words, the finding will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 299 Conn. 308, 320, 9 A.3d 708 (2010).

[9] The plaintiff's related argument that the geographic limitation "imposes a very substantial financial burden upon the plaintiff which interferes with

the court's stated desires concerning support and payments to the guardian ad litem," has been addressed in part I of this opinion.

[10] The defendant argues in her brief that the plaintiff's appeal is frivolous and claims that the plaintiff cited facts not found by the trial court. She requests sanctions in the form of attorney's fees under Practice Book § 85-2. We decline to address this issue because the defendant failed to make her request in a separate motion. See *Tyler* v. *Tyler*, 163 Conn. App. 594, 598 n.3, 133 A.3d 934 (2016) (declining to review request for sanctions when not raised in motion for sanctions); *Hernandez* v. *Dawson*, 109 Conn. App. 639, 644, 953 A.2d 664 (2008) (same); Practice Book § 85-3.

_____